UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VASCULAR IMAGING PROFESSIONALS, INC.,<br><br>         Plaintiff,<br><br>v.<br><br>DIGIRAD CORPORATION, et al.,<br><br>         Defendants. | Case No.: 19cv486 JM(MSB)<br><br>**ORDER ON DEFENDANTS' MOTION TO DISMISS** |

Presently before the court is a motion to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) filed by Defendants Digirad Corporation ("Digirad Corp.") and Digirad Imaging Solutions, Inc. ("Digirad Imaging") (collectively "Defendants"). (Doc. No. 10.) The motion has been fully briefed and the court finds it suitable for submission on the papers and without oral argument in accordance with Civil Local Rule 7.1(d)(1). For the reasons set forth below, the motion is granted in part and denied in part.

**I. Background**

On February 1, 2019, Plaintiff filed this lawsuit in San Diego County Superior Court asserting claims for breach of contract, breach of the covenant of good faith and fair dealing, declaratory relief, tortious interference with contract, interference with prospective

economic advantage, and unfair competition. (Doc. No. 1 at 8-22.[1] ("the Comp").) On March 13, 2019, Defendants removed to this court pursuant to diversity jurisdiction. (Doc. No. 1.)

In May 2017 Plaintiff, a mobile nuclear imaging service and Digirad Corp., a maintenance provider for nuclear imaging cameras and equipment, entered into a written Equipment Full Maintenance & Support Master Agreement (the "Maintenance Agreement"). (Comp at ¶ 8.) Under the terms of the Maintenance Agreement, Plaintiff was required to pay an annual fee of $19,500 per nuclear camera, paid monthly in advance, and Digirad Corp was to provide on-demand maintenance services through May 30, 2021. (*Id.* at ¶ 8(a)(b).) In addition, Digirad Corp. was to provide "a Windows 7 upgrade to five (5) of Plaintiff's cameras and one (1) workstation, for a total of six (6) licenses." (*Id.* at ¶ 8(c).)

Plaintiff maintains that it has paid all monthly fees and charges and all other acts required under the Maintenance Agreement. (*Id.* at ¶ 9.) The complaint alleges that Defendants breached the Agreement by failing to provide Windows 7 upgrades and refusing Plaintiff's repeated demands to do so. (*Id.* at ¶ 10.) Further, it is alleged that in response to "Plaintiff's demands for performance Defendants claimed that its performance was cost prohibitive and then further breached the Maintenance Agreement by purporting to terminate the agreement, without good cause." (*Id.*) Despite, terminating the Agreement, Plaintiff claims that Digirad Corp. has continued to withdraw monthly charges from Plaintiff's account. (*Id.*)

Plaintiff alleges that Defendants breached the implied covenant of good faith and fair dealing because they fabricated grounds for terminating the Agreement in order to interfere with its business operations to benefit Digirad Imaging, a mobile nuclear imaging service and direct competitor of Plaintiff's, and "in order to avoid its own performance

---

[1] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

obligations under the Management Agreement." (*Id.* at ¶¶ 2, 15.) It is also alleged that Digirad Corp. had no intention of proceeding in good faith nor delivering the software upgrades the Maintenance Agreement provided for when it entered into the Agreement. (*Id.* at ¶ 19.) Further, Plaintiff contends that Digirad Corp. intended to use the relationship created by the Maintenance Agreement to undermine its business operations for the benefit of Digirad Imaging. (*Id.*)

Plaintiff also alleges that Digirad Imaging caused breach or disruption of the Maintenance Agreement by requesting Digirad Corp. withhold software and services and by conspiring in Digirad Corp's termination of the Agreement and continued withdrawal of monies from Plaintiff's accounts, even though none of the contracted services were being performed. (*Id.* at ¶ 26.) Further, it is alleged that Defendants acted in concert to cause Plaintiff to lose its clients so that they "could be solicited to contract instead with Digirad Imaging." (*Id.* at ¶ 30.) Specifically, it is alleged that Defendants conspired to undermine Plaintiff's business operations and interrupt Plaintiff's services to customers by withholding services and upgrades that it was required to provide under the terms of the Maintenance Agreement. (*Id.*)

On April 3, 2017, Defendants filed a motion seeking to dismiss the declaratory relief, tortious interference with a contract, intentional interference with a prospective economic advantage and violation of California's Unfair Competition Law (UCL) claims under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 10.) Plaintiff filed its opposition to the motion, (Doc. No. 12), and Defendants filed a reply, (Doc. No. 13).

**II.     Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(6), a party may bring a motion to dismiss based on the failure to state a claim upon which relief may be granted. A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Ordinarily, for purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the

light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008). But, even under the liberal pleading standard of Rule 8(a)(2), which requires only that a party make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 555). "Determining whether a complaint states a plausible claim for relief … [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III. Discussion

Defendants move to dismiss four out of the six claims alleged in the complaint, asserting that either the claims do not plausibly suggest an entitlement to relief or that Plaintiff is seeking relief that is unavailable as a matter of law.

### A. Declaratory Relief Claim

Defendants seek to dismiss the declaratory relief claim claiming it is unnecessary because an adequate remedy exists under the breach of contract claim. Specifically, Defendants assert that determination of the breach of contract claim will resolve any question regarding interpretation of the contract, therefore dismissal of this claim is appropriate. (Doc. No. 10-1 at 9-10.) Plaintiff counters that the declaratory relief claim encompasses claims not addressed in its breach of contract claims, namely a request that the Maintenance Agreement be rescinded and that it receive restitution. (Doc. No. 12 at 4.)

28 U.S.C § 2201 provides that "any court of the United States, upon the filing of the appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Declaratory relief is not intended to redress past wrongs, its purpose is to resolve uncertainties or disputes that may result in future litigation. *See U.S. v. Wash.,* 759 F.2d 1353, 1357 (9th Cir. 1985) (en banc) ("Declaratory relief should be denied when it will neither serve a

useful purpose in clarifying or settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties"), cert. denied, 474 U.S. 994 (1985). "Various courts have held … that, where determinations of a breach of contract claim will resolve any question regarding interpretation of the contract, there is no need for declaratory relief, and dismissal of a companion declaratory relief claim is appropriate." *Streamcast Networks, Inc. v. IBIS LLC,* No. CV 05-04239 MMM (Ex), 2006 WL 5720345, at *3-4 (C.D. Cal. May 2, 2006) (collecting cases). However, "declaratory relief is appropriate where a breach of contract claim will not settle all of the contractual issues concerning which plaintiff seeks declaratory relief." *Id.* (citing *Sierra Foothills Pub. Util. Dist. v. Clarendon Am. Ins. Co.,* No. CVF05736RECLJO, 2005 WL 2089832, *6-7 (E.D. Cal. Aug. 29, 2005); *Lunding v. Biocatalyst Res., Inc.,* No. 03 C 696, 2003 WL 22232831, *3 (N.D. Ill. Sept. 22, 2003))[2].

Here, Plaintiff's breach of contract claim seeks damages and the declaratory relief claim seeks a declaration that the Maintenance Agreement has been rescinded and "that Plaintiff receive restitution of all consideration paid thereunder." (Compl. at ¶ 19.)[3] The breach of contract claim seeks damages to redress past wrongs, whereas the declaratory

---

[2] In *Sierra Foothills,* the court declined to dismiss the declaratory relief claim as duplicative because it did not view the claim as serving "no useful purpose." *Sierra Foothills,* WL 2089832, at *7. Similarly, in *Lunding,* the court declined to dismiss plaintiff's declaratory relief claim, finding that it was not duplicative of the breach of contract claim. The court explained that "[i]f plaintiff prevails on his breach of contract claim, his remedy would be damages, not reinstatement of the preferred stock. A declaration that the rescission was invalid, however, might induce defendants to reinstate the stock voluntarily, or, if necessary, support a request for injunctive relief." *Lunding*, 2003 WL 22232831, at *3.

[3] In the alternative, the declaratory relief claim seeks a declaration of the parties' rights under the Maintenance Agreement as to whether it is entitled to rescission of the Agreement and restoration of all benefits conveyed to Digirad Corp, whether the Agreement has been terminated and if any rights and duties survive termination, and whether any notice of termination served by Digirad Corp has been waived as a result of Defendants subsequent withdrawal of monthly maintenance fees after the termination. (Compl. at ¶ 22.)

relief claim goes one step further, seeking a declaration that Plaintiff will incur no future liability, meaning resolution of the breach of contract claim will not fully resolve Plaintiff's request for declaratory relief. Because the two claims seek different forms of relief, the court cannot conclude that Plaintiff's declaratory relief claim is duplicative of its breach of contract claim. Accordingly, the court **DENIES** the motion to dismiss the declaratory relief claim.

### B. Tortious Interference with a Contract Claim

Defendants seek to dismiss the tortious contract interference claim asserting that this claim fails as a matter of law because Digirad Corp cannot be tortiously liable for interfering with performance of its own contract. Defendants also argue that this claim fails because the complaint is devoid of any facts supporting the allegation that Digirad Imaging performed intentional acts designed to induce a breach or disruption of the Agreement because as members of the same corporate family, Digirad Corp. and Digirad Imaging cannot conspire with each other as a matter of law. (Doc. No. 10-1 at 10-12.) In its opposition, Plaintiff concedes that the tortious interference claim should not have been brought against Digirad Corp. (Doc. No. 12 at 5.)

To successfully plead a claim for intentional interference with a contract requires (1) the existence of a valid contract between the plaintiff and a third party, (2) the defendant's knowledge of the contract, (3) intentional acts designed to induce a breach or to disrupt a contractual relationship, (4) actual breach or disruption of the contractual relationship, and (5) resulting damage. *Bank of New York v. Fremont Gen. Corp.,* 523 F.3d 902 (9th Cir. 2008) (citing *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1148 (2004)).

Here, Plaintiff claims that Digirad Imaging intentionally interfered with the Agreement between it and Digirad Corp by:

> requesting that Digirad Corp withhold software and services required under the Maintenance Agreement and by conspiring in Digirad Corp.'s alleged termination of the Agreement and continued withdrawal of moneys from Plaintiffs [sic] accounts despite such announcement that it would no longer provide any services under the Maintenance Agreement.

6

Compl. at ¶ 26. Further, it is alleged that Digirad Imaging, as Plaintiff's direct competitor, intended to induce a breach of the Agreement and that by doing so it believed it would gain a competitive advantage over Plaintiff. (*Id.* at ¶¶ 2, 25.) Finally, Plaintiff alleges that as a direct and foreseeable result of Defendants' interference, Plaintiff was damaged. (*Id.* at ¶ 27.)

But, the complaint is devoid of any facts in support of Plaintiff's bare allegations of the conspiracy[4] between the Defendants and that Digirad Imaging intended to interfere with the contract. Such conclusory allegations do not establish the necessary elements of the claim. *See Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555) (a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'") Indeed, without well pleaded allegations of Digirad Imaging's and Digirad Corp. existing as separate and independent entities, Plaintiff's claim of tortious interference

---

[4] Because the court has dismissed the claim, it declines to address Defendants' additional argument regarding the applicability of the intra-corporate conspiracy doctrine. Under this doctrine members of the same corporate family, including subsidiaries and employees cannot conspire with each other. *Nestle USA, Inc. v. Crest Foods, Inc.,* LA CV16-07519 JAK (AFMx), 2017 WL 3267665, *16 (C.D. Cal. July 28, 2017) (internal quotation marks and citation omitted). "The premise for this rule is that entities that are commonly owned are functionally the same entity in connection with the consideration of a conspiracy claim." *Id.* (internal citation omitted.) As currently pled, the complaint alleges that Digirad Imaging is an affiliate of Digirad Corp. an entity over whom Digirad Corp. has "ownership and control." (Compl. at ¶¶ 2-3.) Thus, under California law, the doctrine could bar a claim based on a conspiracy between the two defendants if the amended complaint fails to allege facts that they are legally distinct or "unaffiliated" separate entities. *See, e.g., U.S. ex. rel. Markus v. Aerojet Rocketdyne Holdings, Inc.,* No. 2:15-cv-2245 WBS AC, 2019 WL 2024595, *6 (E.D. Cal. May 8, 2019) (dismissing the conspiracy claim as a matter of law, where relator only identified a parent company and its wholly owned subsidiary as defendants and failed to allege that the defendants conspired with any independent individual or entity); *U.S. ex. rel. Campie v. Gilead Scis., Inc.,* No. C-11-0941 EMC, 2015 WL106255, *15 (N.D. Cal. Jan. 7, 2015) (finding the doctrine required dismissal of the conspiracy claim because one defendant was a wholly owned subsidiary of the defendant it was alleged to have conspired with).

against Digirad Imaging suffers from the same flaw it has with the tortious interference claims against Digirad Corp., (*see above*).

Accordingly, the claim for tortious interference with a contract claim is **DISMISSED WITHOUT PREJUDICE** against Digirad Imaging. In light of the fact that Plaintiff has conceded that this claim should not have been brought against Digirad Corp., the court **DISMISSES WITH PREJUDICE** the tortious interference with a contract claim against it.

### C. Intentional Interference with Prospective Economic Advantage Claim

Defendants seek dismissal of the intentional interference with prospective economic advantage claim contending that Plaintiff has failed to allege that an economic relationship existed between it and some third party, that was known to Defendants, or that Defendants engaged in wrongful conduct independent of the interference itself. In support of this, Defendants assert that the breach of contract cannot, as a matter of law, constitute the "wrongful" conduct required for the tort of intentional interference with prospective economic advantage. (Doc. No. 10-1 at 13-14.)

The tort of intentional interference with prospective economic advantage requires (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant. *Sybersound Records, Inc. v. UAV Corp.,* 517 F.3d 1137, 1151 (9th Cir. 2008) (citing *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134, 1153 (2003)). Notably, "'a complainant must plead that the defendant engaged in an independently wrongful act' outside of merely interfering with a contract." *Nestle USA, Inc. v. Crest Foods, Inc.,* LA CV16-07519 JAK (AFMx), 2017 WL 3267665, at * 14 (C.D. Cal. July 28, 2017) (quoting *Korea Supply Co.,* 29 Cal. 4th at 1157-58).

However, "merely referring to customers in general is not sufficient to show a specific prospective relationship." *Nestle*, 2017 WL 3267665, at *14 (quoting *Ketab Corp.*

*v. Meriani & Assocs.,* No. 2:14-cv-07241-RSWL (MRW), 2015 WL 5050512, at * 6 (C.D. Cal. Aug. 26, 2015); *see also Sybersound Records,* 517 F.3d at 1151 (dismissing plaintiff's intentional interference with prospective economic advantage claim because plaintiff "merely states in a conclusory manner that it 'has been harmed because its ongoing business and economic relationships with [c]ustomers have been disrupted.' [Plaintiff] does not allege, for example, that it lost a contract nor that a negotiation with a [c]ustomer failed.").

Here, the Complaint alleges that "Plaintiff had existing prospective business relationships with doctors and medical groups" which use its services. (Compl at ¶ 29.) And that "[g]iven the existing relationship between Plaintiff and its clients, such relationships had a substantial probability of future economic benefit, which was more of a mere "hope" or "desire." (*Id*.) It is also alleged that Defendants acted in concert to undermine Plaintiff's business operations by withholding the services and upgrades Digirad Corp. was required to provide under the Agreement in order to interrupt service to Plaintiff's customers. (*Id*. at ¶ 30.) Further, Plaintiff asserts that Defendants acted with the intent of causing a disruption of Plaintiff's economic relationships for their mutual profit. (*Id*. at ¶ 31.)

However, such general conclusory allegations regarding lost sales and the damage to the relationships between Plaintiff and its customers do not satisfy the pleading requirements of the first element of the claim. *See Sybersound Records*, 517 at 1151. Plaintiff has merely concluded that Defendants acted in concert and that it lost sales but has failed to plead facts in support of these contentions. *Iqbal,* 556 U.S. at 678. ("[t]hread bare recitations of the elements of a cause of action, supported by mere conclusory statements ... do not suffice" to state a claim). Aside from a cursory reference to Digital Imaging and Plaintiff being "direct competitors," absent from the complaint are any allegations related to the second element, namely Defendants knowledge of any relationship between Plaintiff and these customers.

Neither does the complaint identify the wrongful conduct engaged in by the Defendants separate from the breach of contract itself. *See Silicone Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1311 (N.D. Cal.1997) (citations omitted) (in California plaintiff has the burden of proving that the defendant's interference "was wrongful by some measure beyond the fact of interference itself."); *JRS Prods., Inc. V. Matsushita Electric Corp. of Am.,* 115 Cal. App. 4th 168, 183 (Jan 26, 2004) ("wrongful or not, the termination [of the contract] is not 'independent' of [defendant's] interference with [plaintiff's] interest…a breach of contract claim cannot be transmuted into tort liability by claiming that the breach interfered with the promisee's business.").

Accordingly, the claim for intentional interference with prospective economic advantage claim is **DISMISSED WITHOUT PREJUDICE**.

### D. Violation of California's Unfair Competition Law ("UCL")

Finally, Defendants seek dismissal of the unfair competition claim on several grounds. Defendants assert: (1) adequate relief at law is available therefore equitable relief is precluded[5]; (2) the complaint fails to sufficiently allege conduct violating either the

---

[5] Although Plaintiff did not address this argument in its opposition, the court is not persuaded that equitable relief is precluded because Plaintiff is entitled to an adequate legal remedy and therefore declines to dismiss the claim on these grounds. *See, e.g., Covell v. Nine West Holdings, Inc.,* Case No.: 3:17-cv-01371-H-JLB, 2018 WL 558976, at *7 (S.D. Cal. Jan. 25, 2018) ("A plaintiff seeking damages is not automatically precluded from obtaining UCL relief."); *see also* CAL. BUS. & PROF. CODE §17205 ("unless otherwise expressly provided, the remedies or penalties provided by [the UCL] are cumulative to each other and to the remedies or penalties available under all other laws of this state."). Meaning, plaintiffs may seek injunctive and/or restitutionary relief separate and apart from the same underlying claims in which plaintiffs seek monetary damages. *Estakhrian v. Obenstine,* 233 F. Supp. 3d 824, 846 (C.D. Cal. 2017) (citing Stern, Bus & Prof. C. § 17200 Practice at § 5:86, 5-41 (§ 17200 is a broad remedial statute designed to supplement rather than supplant other pro-consumer laws."). Furthermore, courts have "very broad discretion to determine an appropriate remedy as long as it is supported by the evidence and is consistent with the purpose of restoring to the plaintiff the amount that the defendant wrongfully acquired." *Astiana v. Kashi Co.*, 291 F.R.D. 493, 506 (S.D. Cal. 2013). This court therefore finds nothing to prohibit plaintiff from pursuing its "equitable claims in the

unlawful or unfair prongs of the UCL; and (3) the complaint is devoid of factual allegations to support allegations of fraud in light of the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil.  (Doc. No. 10-1 at 15-20.)

The UCL protects California's citizens by prohibiting any "unlawful, unfair or fraudulent business act or practice." CAL. BUS. & PROF. CODE §17200.  "Because the statute is written in the disjunctive, it is violated where a defendant's act or practice violates any of the foregoing prongs." *Davis v. HSBC Bank Nevada, N.A,* 691 F.3d 1152, 1168 (9th Cir. 2012).  "Unfair competition" under section 17200 has been defined very broadly by the California Supreme Court to include "anything that can properly be called a business practice and that at the same time is forbidden by law." *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000) (internal quotation marks and citations omitted).

Under the "unlawful prong" of section 17200, a specific activity is not proscribed, rather it, "borrows violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable." *Id.* at 1048.  However, "a common law violation such as breach of contract is insufficient" to support a claim under the unlawful prong of section 17200.  *Shroyer v. New Cingular Wireless Servs.,* 622 F.3d 1035, 1044 (9th Cir. 2010).  Here, Plaintiff has only alleged common law claims and has, therefore, failed to state a claim under the first prong of the UCL.  *See, e.g. Shroyer,* 622 F.3d at 1044 (plaintiff failed to state a claim under the unlawful prong of section 17200 because he did not go beyond alleging a violation of common law); *Mazal Group, LLC v. Espana*, 2:17-cv-05856-RSWL-KS, 2017 WL 6001721, at *4 (C.D. Cal. Dec. 4, 2017) (granting motion to dismiss UCL claim when plaintiff did not go beyond alleging a violation of common law).

---

alternative to legal remedies at the pleading stage." *Adkins v. Comcast Corp.,* Case No. 16-cv-05969-VC, 2017 WL 3491973, at *3 (N.D. Cal. Aug. 1, 2017).

Where, as here, the parties are alleged to be competitors, "a business practice is "'unfair' only if it 'threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.'" *See Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 254 (2010) (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,* 20 Cal. 4th 163, 187 (1999)). Here, the unfair competition claim contains the singular allegation: "[c]ommencing in mid-2017 and continuing through the present Defendants have engaged in unlawful, unfair or fraudulent business acts or practices." (Compl. at ¶ 34.) Plaintiff simply relies on the conclusory allegations that Defendants conspired to interfere with the contract between Digirad Corp. and Plaintiff, withhold services, induce a breach of the Agreement, and gain a competitive advantage over Plaintiff. *See generally* Compl. The result is that there are no specific factual allegations regarding unfair business practices contained within the complaint nor has Plaintiff adequately pled that Defendants alleged conduct threatened an incipient violation of any antitrust law or the spirit or policies of those laws. Therefore, Plaintiff has failed to state a claim with the requisite particularity under the unfairness prong of the UCL. *See Park Kim v. Daikin Indus. Ltd.,* Case No. 2:15-cv-09523-CAS(KKx), 2016 WL 5958251, at *21 (C.D. Cal. Aug. 3, 2016) (dismissing UCL claim under the unfair prong because "plaintiffs do not specifically plead which acts were unfair, let alone that the utility of the defendants' conduct is outweighed by its harm.").

For UCL claims brought under the "fraud prong" a plaintiff need only "'show that members of the public are likely to be deceived' by the business practice or advertising at issue." *Kowalsky v. Hewlett-Packard Co.,* 771 F. Supp. 2d 1156, 1159 (N.D. Cal. 2011) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009)). Plaintiff's claim under this prong fairs no better than the unfair conduct allegations in that it has not been pled with any degree of specificity. Defendants' assertion that the Complaint is devoid of any factual allegations of deception is correct. Thus, Plaintiff has failed to state a claim with the requisite particularity under the fraud prong of the UCL. Moreover, to the extent that

Plaintiff asserts a UCL claim that is based on or grounded in fraud, it does not meet the requirements of Rule 9(b). *See Clark v. Countrywide Home Loans, Inc.*, 732 F. Supp. 2d 1038, at 1050 (E.D. Cal. 2015) ("to the extent Plaintiff asserts a UCL claim that is based or grounded in fraud, it must meet the requirements of Rule 9(b)") (citing *Kearns v. Ford Motor. Co.,* 567 F.3d 1120, 1124-1127 (9th Cir. 2009)).

In light of the above, the Unfair Competition claim is **DISMISSED WITHOUT PREJUDICE**.

### IV. Conclusion

In accordance with the foregoing, the court order as follows:

1. Defendants' motion to dismiss Plaintiff's claim for declaratory relief is DENIED;
2. Defendants' motion to dismiss the tortious interference with contract claim against Digirad Corp. is GRANTED with PREJUDICE;
3. Defendants' motion to dismiss the tortious interference with contract claim against Digirad Imaging is GRANTED with leave to amend;
4. Defendants' motion to dismiss the intentional interference with prospective economic advantage claim is GRANTED with leave to amend; and
5. Defendants' motion to dismiss the unfair competition claim is GRANTED with leave to amend.

Plaintiff has up to and including *August 20, 2019* to file an Amended Complaint with the court. Defendants shall respond to Plaintiff's FAC within the limits established by the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

Dated: July 30, 2019

Hon. Jeffrey T. Miller
United States District Judge